Good morning. Good afternoon, everybody. It's a matter of G.L. v. Ligonier Valley School. Say that again, please. Ligonier. Ligonier. Where are you? I know you're here. Where's your client's school district? I've never heard of it before. It's close to La Trobe in the mountains. All I know about La Trobe is that's where they make rolling hot beer. No, La Trobe is on the Palmer country. Who might have it? Well, I know because they make it on a rolling hot beer. I don't do golf. Apparently, Judge Greenway does. Anyhow, I guess we can start. Probably wasted half of your time. May it please the court. Christina Lane on behalf of the Ligonier Valley School District. I'd like to request your honors to reserve five minutes of my time for rebuttal. All right. The issue before you today is the proper statutory interpretation and application of two provisions of IDEA. Help me understand how the language of this statute supports your argument. And if it doesn't, and we can get to legislative history because it's ambiguous, what is it in the legislative history that would support your argument? Your Honor, I believe there are three reasons that the district's argument is supported. First of all, we've relied upon the Court of Appeals' prior decisions, which has repeatedly referred to the two-year time limit in which to bring forth IDEA claims. Our decisions or other courts' appeals? Your decisions, Your Honor. Before the 204 amendments, though, aren't they? No, Your Honor. The case of DK versus Abington School District. And in DK, we said that the parties conceded the application of the statute of limitations, so we never really got to it. I'm not even sure we discussed the – I'll just abbreviate it by saying F, the F subsection provision that interfaced with the B subsection here. I'm not even sure we discussed it there. So how does that help you? Your Honor, the DK court specifically stated that the IDEA statute of limitations requires the parent to request a due process hearing within two years, and they made reference and cited to the F provision, which is F3C. And you went on to say that parents have the same two years to file an administrative complaint alleging a violation of IDEA or Section 4. We said in DK that the plaintiffs did not dispute that because they requested a due process hearing in January 2008, the statute of limitations generally would limit their claims to conduct after 2006, but they conceded that point, so the issue was never really before us. I agree, Your Honor, that the issue that's before you today was not so stated in DK, but DK provides current instruction to all that you begin by delimiting the time period to which DK claims apply. You then go on to state in DK that the parties concede at the time of filing, DK gets to go back two years from that point in time in which to bring forth the claims. In your language in reviewing the statute of limitations, you refer to both sections that are at issue before you today. You refer to sections... Okay, well, I can assume that you're right. I don't think there's any disagreement in terms of the time within which a claim must be brought. The issue is once a claim is brought within that time, and it's not brought within that time, it's gone, and I think you'd agree it's gone because it's an affirmative defense, it's not jurisdictional. Maybe it wouldn't, but let's assume we're there, we get over that hump, the claim is brought within three years. The issue here seems to be once you bring the claim, the remedy the court can provide. Can it look beyond two years from that post-trig date, as it's called, the knowing or should have known date, or if it's been a continuing deprivation as is alleged here, is it limited to that two years, can it go beyond the two years to fashion a remedy which the court might deem is necessary to address the alleged failure to provide a free and appropriate public education, to compensate the child for the education that the kid didn't get, that the school district should have gotten? No, Your Honor, the statutory text supports that as the district's position is that when we reference the two years, it's the same two years. You were to bring a cause of action on two years, on or before that knew or should have known date, and then you are to file your claim within that same two years. The reference to on or before is limiting your claims to two years, and it's telling you timely, quick resolution, you're on notice of that cause shift date, file your complaint. Inherent within IDEA, and it's replete with language that says our purpose is to address the educational needs of students, but certainly it isn't a purpose to have a claim say today, wait two years, sit on those rights, and then take that today date as a cause shift date and say, oh, and by the way, I want to litigate two years prior. Then we have a four-year time frame. On your cause shift date, there's a certain body of knowledge that you have. You agree with that, right? And knew or should have known. Right. There's a certain body of knowledge you have on that date of particular violation. Correct. Right? And you're not saying that those violations have to have occurred on that date, right? So by necessity, by definition, that date, right, has to include violations that have occurred before that date. You agree with that, right? I do. Okay, great. So in this date, how do you pronounce the acronym? Cause shift. Cause shift. Okay, we'll go with that. Okay, cause shift date is January 1 of 14. So if I'm understanding you correctly, we can go back for two years of violations. Yes? If I have a violation January 1 of 13 and I didn't become aware of it until January 1 of 14, that's okay, right? On the January 14 operative date in your scenario, Your Honor, you would have two years to file. You have to bring forth your claim. And within that same two years is where you litigate claims. You don't get to go two years prior to that January 2014 date. But in my hypothetical, I just told you that on January 1 of 14, I became aware of particular violations, right? One of those violations occurred on January 1 of 13. I didn't know about it until January 1 of 14. So even under your scenario, that would be a violation that I could litigate, right, if I brought my claim between January 1 of 14 and January 1 of 16, correct? Well, the IDEA requires that you speak to me. The question was ended with correct. Now, that you can answer yes or no. I used to say as a trial judge, answer the question. If you want to explain it, fine, but answer the question first. The answer to your question is on the January 14th. Wait, wait, wait. Let's just get a yes or no and then if you want to explain it, go ahead. But I think it's an important question. Are you limited only to the, as I understand the hypothetical, are you limited only to that which occurred on January 1 of 2013 or can you go back further than 2013 in that scenario? Your Honor, the only reason I'm struggling with answering your question is because it all depends upon when you file. Because your date is, if you're aware of this date, it's as you presented January 1, 2014 and you asked on that date, you can go two years back and it would encompass that January. Okay, I will help you. I will go back to help you. Okay. Be careful what I hear. This may not help you. I recognize that. I'll go over it quickly again. Your caution date is January 1 of 14, right? Yes. Okay. On that date you become aware of particular violations. One of the violations you become aware of occurred on January 1 of 13. Is it correct that I may now litigate any time from the caution date forward until January 1 of 16? No. Okay. What's the last date that I can litigate what I've just become aware of on January 1 of 14? If you decide to wait on your rights and file two years from that date, you would have from that 14 time frame to the 16 to litigate. You just have to understand that. That's what I asked you that and you said no. You asked if you could go prior to the 13 dates and I said no. I didn't say that. Here's what I said, okay? The caution date is January 1 of 14. What I knew or should have known on that date is a violation that occurred on January 1 of 13, right? Mm-hmm. Under your interpretation, may I now litigate what I learned on January 1 of 14 for two years at any time? I could do it on day one, day 360, day 450, et cetera, between January 1 of 14 and January 1 of 16. Is that correct? Yes. Okay. So that you would have to understand that if your complaint involves a provision within the IEP and you learned of it on that January 1 of 14 date, you now have a no knowledge date or an awareness date. When you decide to bring forth immediately your complaint for due process, you would have from that two years back. Okay, now. But. Here's an additional fact, okay? On January 1 of 14, I become aware of two violations, one that occurred on January 1 of 13 and one that occurred on January 1 of 11, right? So the one on January 1 of 11 is obviously three years removed from the caution date, right? Okay. Now, are they related? Are they related? You mean is it a continuing violation? Let's assume for the moment that they're not. Okay. Okay. May I likewise litigate either, I'm sorry, both the January, what I learned on the 14th, that's a January 1 of 13 violation as well as the January 1 of 11 violation. May I litigate that any time between January 1 of 14 and January 1 of 16? No, Your Honor. And why may I not litigate the 2011 if I learn of it on January 1 of 14? If the court, if at the time of due process the issue was presented that there was a dispute as to that caution date, the knowledge date. In this particular situation, there wasn't a dispute. In my hypothetical, there's no dispute that January 1 of 14 is the caution date about the January 1 of 11 violation. There's no dispute. And under the scenario of awareness, you would have two years to bring forth that claim from that January 1, 2014 date. The statute does not operate to suggest that there's a claim accrual, find out about it, sit and wait, figure out what you want to do for two years, and then seek redress to equal four years. I get your theory. I just want to know whether I could, having found out about the 11 violation on January 1 of 14, whether I can bring it any time between January 1 of 14 and January 1 of 16. And if I've understood your response, the answer is yes, I may. The January 2011 claim, depending actually what that issue is, the argument being when they knew or should have known. There's no dispute that we knew or should have known on January 1 of 14. And the only scenario I could see operating in that situation is if there was a child who did not receive services who was newly evaluated or there was a new evaluation. It doesn't matter if you can't conceive of a hypothetical. The question is whether under the rubric that you're trying to put to us that you want us to adopt, that would be permissible. And if I've understood you correctly, the answer is yes, it would be permissible. Is that right? Is that what you're saying? Only if the knew or should have known date was established and that we weren't using that, like the filing happened not two years later, very close in time so that the window is pretty much the same. Like we're not looking at, as we are here, where we have a filing date or, excuse me, an action and wait two years and then a request to say to the court, and oh, by the way, we get to go two years back. The way I'd like the hypothetical to work is I'd like it to inform what we have to do here, but I need an answer to the hypothetical, and I feel like the last minute you've tried to retract. In our case, the cushion date was the filing date. There was no argument presented as to no, we need another date. So the district came in and said the filing date in 2012, you're going to go back two years. In this particular case, we were in 2012 for filing, and the child, the student, had left the district in March of 2010. So by going back to that two-year time frame as the district presented, there's only a three-month window of liability. Look at the implication in terms of the school's obligation to provide a complete school education for the child. The child left. The family worked out that I think there were two years altogether involved here from the time there was this meeting with the principal, and then the letter was sent I think a year later informing the parents that the child was failing. The child ends up leaving the school. So if you're saying it was right for a two-year, arguably a two-year deprivation of education, the parents are entitled to three months of relief. Do you think Congress intended that result? Yes, surely. I would have to say yes, but it's a stupid question. I set myself up for that. What supports your argument that Congress would intend a result that seems so contrary to the policy that drove this legislation? How about just the plain language of the statute? Isn't your reading that for every day that you, from the time that you knew or should have known the claim, for every day in what seems like a two-year window Congress set up, that you investigate your claim to see whether you should bring it and how you should bring it, and then you forge your pleadings to file within that two-year window? Every day you wait, you're suggesting an interpretation that you lose a day of remedy. What other statute works like that with the statute of limitations? The clear intent of the purpose of the statute, Your Honor, is to provide quick and timely resolution of disputes when they're relevant to the child. This isn't a tort-like monetary damages statute. We're talking about providing educational services that may have been denied to a child when they're relevant. That is exactly the point. It's not my car runs red light, runs into me on date X in a certain year. At that point I know I've been injured. Whatever happens to me is going to be traced directly to that day. It happens once it's over. That's very different from a situation where there's an obligation, a continuing obligation to provide an appropriate education to a child. And every year, and I'm not saying this is what happened here, that's not the issue with FWISC. Every year the child is denied an appropriate IEP for whatever reason. Something is not put in there or something is in there that wasn't provided. For every year the child is denied an appropriate IEP. There's the violation on the part of the school district to do that which the law requires of them, provide an education to the child. So why shouldn't a remedy be commensurate with the violation, with the deprivation? It's not like the remedy I need for the broken leg that happened when this guy runs the red light and smashes into me and it's over. You can take a snapshot in time and that's the entire insult, the body insult. Here you can't really do that. There's a continuing violation and if the purpose of law is to compensate that, I don't know how the law can be read in a manner that eliminates a big chunk of time here, 75, 80% of the time, that the violation was occurring and yet that would be the result of your interpretation. I cut off, Judge Cross, I'm sorry. That's okay. I'm just struggling to see where in the language of the statute, where did it mention remedy at all or any limitation on the remedy? And when we look at the legislative history, you cite on page 22 of your brief the Senate report that says, in essence, where the issue giving rise to the claim is more than two years old and not ongoing, the claim is barred, where the conduct or services at issue are ongoing to the previous two years, the claim for compensatory education services may be made on the basis of the most recent conduct or services. You ended the quote there and the quote actually continues to say, in discussing the claim for compensatory education services may be made, it goes on to say on the basis of the conduct or services that were more than two years old at the time of due process or the private placement. When we read the full sentence, doesn't that go directly against your position and, in fact, supports the much more expansive position of amicus in this case? It's offering that if they're continuing, they're going to be in the current IEP and they will be addressed in that two-year period. They're very clear and explicit that it is a short time frame to address any remedy. So if there's something that has occurred in the child's educational plan and it's brought within a two-year period, although it may be ongoing prior years, it's going to be addressed within that two-year window. It's even worse because what happens if it gets left out of the most current IEP and it's sort of been in the most IEP? You're saying the school district gets rewarded by cutting something out of the IEP because that cuts off the remedy. At any time there's a change to an IEP, the parents are provided notice of that change and are given that opportunity to challenge that. I understand that, but that doesn't go to the remedy. If something is left out, which shouldn't be left out, how do you compensate or address that situation? The clear congressional intent in reauthorizing IDEA and putting forth for the first time a limitation was to address the claims but to also recognize that the current status at that time before reauthorization, people were just sitting back filing claims years later. But you're not arguing that's what happened here. These parents seem like there may have been some delay, but I'm not suggesting these parents have been so deleterious to fall in the scope of our this is our Abington school district language where we talked about unreasonable delay. You're not suggesting that's our situation here, are you? Maybe you are. I am not making any comment as to the action that the parents took in the case. So it's clear and factual. They removed their student in March of 2010 and waited two years to file for due process. Now, at the time that they removed their child, they filed a Pennsylvania Human Relations complaint against the school district. So we were involved in litigation where they were challenging discrimination on the basis of the educational services provided to the child as well as retaliation. So there was litigation ongoing, clearly an awareness state. Why they choose to wait until 2012, I don't know. But that's what happened here. Based on the statutory language that we're dealing with, when's the last date that they could have brought it? If they don't have two years, as Ethel Lee suggests, and I thought that you agreed with my hypothetical earlier, I'm not sure I'm understanding this notion of the parents sitting on their rights. In my hypothetical, you said that if the cost date is January 1 of 2014, they have until January 1 of 2016 to file, right? Right. So we agree with that. We agree with that. And that would be relevant with regard to all of the questions that we posed to you. So I'm not sure where this notion of sitting on your rights comes from. I don't think anyone is suggesting anywhere in any of the papers that if the cost date was January 1 of 14, you could bring it in January 1 of 18. We're talking about whether you have a two-year period, and you agree with that. Right. And you agree that if on the cost date what I've learned of goes back in time, one year or two years or three years, I may bring it within that January 1 of 14 timeframe until January 1 of 16, correct? No, Your Honor. The way I see the statute is that the two provisions are the same two-year period. They both reference a knowledge date. They both say to the parents, you can bring a complaint that has issues that have occurred, you should have known that date two years, and you have two years to file. It's the same two-year period. That can't possibly be right. I mean, metaphysically it can't be right, right? Because if I've just understood what you've said, I couldn't bring anything before January 1 of 14. Unless what you mean is it's the same two-year period, and both of them are meant to be forward-looking two-year statute of limitations. Isn't that what the legislative history suggests, that both the House and the Senate here had in mind a traditional statute of limitations so that parents were not sitting on their rights, they were actually bringing a claim within two years of a new or should-have-known date? Why isn't, to the extent they are the same, isn't that what the legislative history tells us was really intended here? A quick resolution of claims and that the new or should-have-known date, the accrual language, is built into the same provisions. The two-year filing window accepts that there's accrual claims and right now you need to act on them. The confusing point, and I apologize just during this, is for my reference the time frame to file, you can sit and wait two years, but that really shouldn't happen. Most parents, when they know something, they are filing due process immediately from that knowledge date, and we don't have a lag period as we do in this case. So I'm always... But Congress said it could happen. It can. That's what a two-year statute of limitations means. You can't dispute the plain language that it is two years forward from the new or should-have-known date. Right. What you're asking us to say is that the remedy for the claims that you bring in that window, I think you're asking us to say it's actually limited to that window. But if you learn about it on day one, if you learn about something on day one, and on that very same day the school district stops the practice or fixes whatever the deficiency was, that you are required to bring your lawsuit immediately if you want to have the benefit of the full remedy. Yes. I believe that's what the intent of the statute is and why they wrote into the statute the very clear and explicit statutory exception, that if they have a basis to extend that two-year window, they can if they can prove and find, you know, some level that they are entitled to extend that two-year bar will not happen. Senator Harkins, he was one of the prime sponsors. What do we do with Senator Harkin's statement during the Senate hearings? He stated that the two-year statute of limitations, quoting now, is not designed to have any impact on the ability of a child to receive compensatory damages for the entire period in which he or she has been deprived of services. The statute of limitations goes only to the filing of the complaint, not the crafting of the remedy. Now, what do we do with that? We just ignore it or we say, well, that was nice, but his colleagues never really thought much of him anyhow, so they just kind of ignored him when he said that. He's retiring anyhow, so we can't give him much weight. What do we do with that? Well, you're supposed to look at the clear structure of the act, and it's my opinion and position that the two provisions are similar. They act together and refer to the same two-year time period. If you find that it's ambiguous and that there isn't a clear definition of what the statute means, then you have to defer to the United States Department of Education. They wrote to you, the Court of Appeals, in their letter brief. That was one of the most underwhelming letter briefs I have ever seen in my entire life. That was mind-boggling. The fact that it took 60 days to send us two, what is it, a law firm really calls that a cover-your-ass memo, frankly. I agree that they somewhat left the decision to basically say to you, the Court of Appeals, figure it out, but it is our position that it's the same. They referred to the two periods as being the same two-year period, that they wrote the regulations and commented to questions on that, and they have yet to have this issue brought forward to them from any other. And they're considering to think about it. That's what they basically said. I agree with that. We're considering to think about that. It may be the same, but if it's the same and we defer to that, doesn't that same simply mean that Section B is, in essence, a drafting error? You're asking us to read B out of the statute and take the language of no more than two years before the should-have-known date to ignore that language. So you're reading out of the statute one way, but reading them the same, since we have very clear traditional statute of limitations language in C, and our court has already addressed that and held it as a traditional statute of limitations. If we're going to say they're the same and, in that sense, defer to the Department of Education, then don't we need to say that what we have here is simply a forward-looking, traditional two-year statute of limitations from a new or should-have-known date, and if you file within that time frame, then you are compensated going back as far as the injury goes back, not limited to two years. If it's continuing. If it's continuing, not limited except to the extent of however long that ongoing injury took place. This Court has already rejected the proposition that there are continuing violations theory to extend the filing window or extension of claim rule. At each time you've referred to the two-year limit, you've referred to barring claims, which significantly speaks as well to the remedy. If you can't bring a claim forward, you're barred from the remedy to address that claim. The B-6 provision, I do not agree that I'm writing that out of the statute. If you look at the structure of the statute, it starts in the procedural safeguards. That provision starts out with what the procedures are required, and it starts to say that the states and local agencies must provide notice of these procedures. And then it goes on through the Act, and it then gets into, okay, once you have all this notice provision, these are what are required. Now this is how the procedures operate. There's a provision at B-7 that talks about the claim you bring forward as to whether or not your complaint is sufficient to address all claims. And if you don't have them all in that document, then you're barred from seeking redress of those claims. That provision speaks to the scope of claims. And it references back to B-6, and it all works together. The family here would have you read into the statute that you have an additional claim accrual that goes backwards from that date. That's fundamentally inconsistent to allow claims to sit back for years. Children are growing. Let's talk about reading. You learn to read. You learn your sounds. And as you progress through your education, you're no longer learning to read. You're reading to learn. Okay. Let me ask you a question that I think we started with Chief Judge McKee asking, and I'm not sure that we've had an answer to. Do you agree with the following proposition? The statutory language in F-3C and B-6B is not ambiguous. Do you agree with that proposition? Yes, I agree that they are the same intent, same explicit to your time frame. Well, you know, I was a trial judge, too, so I need an answer to the question. Do you agree with that proposition, that it's not ambiguous? I do. You do. Great. Okay. Now I'm hypothetical for you. You'll enjoy this one more than you enjoyed the first one. You will. This one will be a little more colorful. Well, I am a ‑‑ English is my second language. Choose any language you want me to speak, Croatian, Spanish, you know, whatever. And that's true of my wife. We have a child in the school system. The child has been classified. We go to IEP meetings. The school officials tell us everything is fine. We're really not understanding much of what's going on, but we're signing that we were present and we're signing the IEP. We ask a cousin to come with us to a meeting. The cousin comes with us and says, hey, you know, there's a lot going on that you don't understand, and I think there's an IEP violation. Let's assume for the moment that that is a cost date, and that is January 1 of 14. And our cousin now tells us really what's been going on that we had no idea about. And there are violations that have occurred between January 1 of 12 and January 1 of 14. Do you agree with the following proposition? I now have from January 1 of 14 my cost date until January 1 of 16 to have a, you know, make my claim for my due process hearing for those violations that have arisen between January 1 of 12 and January 1 of 14. Before you give me a substantive answer, just tell me whether you agree with that. No, John, I do not agree with that proposition that you can have a knowledge date in 2014, wait two years, and then also attempt to litigate back to 2012. Okay, if you disagree with that proposition, then how does that gel, how does that work with B6B? B6B tells families that, tells the school district that you are to inform families that they can bring forth a complaint on any matter within IDA. There's that language, the identification, the provision of services. Within, not before, let me get the language, I apologize. I think it's an alleged violation that occurred not more than two years before the parent or public agency knew or should have known it. And so can you speak to what before means in that context? Not more than before two years from that date is the language, as you said, in the B6 provision, not more than two years. Before the knew or should have known date. Right. So it's limiting, it's telling us we limit it to that two-year period. The F3C says within that two-year period. So we're talking about the same two-year period. There isn't a claim pool built in the B6 that says you can have this knowledge date and we're going to let you go back two years and then use F3C to operate as a, okay, and you can sit and wait two years. Now, if you act on that knowledge date within a year, it's going to take you back within that window to encompass those claims. You'll go from 18, 14 to 13. I have violations from January 1 of 12 to January 1 of 14. Which ones may I act on? If you file in 15, you can act on until 13. If we're using that filing date, which in operation is usually what occurs. So your position is that it's always moving? How far I may go back is always moving as I move forward? Yes. So if you wait to the end of the two-year period in subsection C, so you wait until December of 2016, right? Okay, 15. Right. So you wait until the last day, January 1 of 2016 to file your complaint. Your position is that although you have timely filed your complaint, you have no remedy whatsoever? For claims predating the January 1, 2014. Correct. As long as we're, and as we typically use, is that filing date as the new or should have been date. There is an opportunity for litigants to say no. We believe it's earlier. That would mean that under that scenario that even if it's necessary, murder to address the violation which occurred within the two-year window. In order to fully complicate that, you've got to look to what happened before that two years. That's just tough. You can't do that because the two-year window is expired and you're limited to that very last act. Say that occurred on the last day of the two-year window. That's all you can put this in on, which would seem like a meaningless remedy because the child's, the whole thing that was happening to the kid didn't happen in the course of one day. It happened maybe over the course of one year or two years or three years, but you're saying, well, that's tough, because you waited until the last day. The only thing you can do is be compensated for whatever happened on that last day, whatever 2 times 365 is, like 4-8, 7-8, whatever that multiplication is. That's all you can be compensated for. Unless they were able to meet the statutory exception. Let's do exceptions again. Yes, your Honor. We're going to save five minutes. Let's go over quite a bit. We'll let Mr. Scali and Ms. Valverde have some extra time, too, if they need it. Good afternoon, Your Honor. Good afternoon. My name is Charles Scali. Here in the court with me today is Geo. His moment is that. Judge Greenway, I'd like to address your hypothetical. Before you do, I want to use the media brief. It seems to me you're only arguing. You're arguing basically what the district court found, and that is that the remedy we're looking for is basically a 2 plus 2 rule, that you've got two years to file. Once you file, you can go back two years from that known date that you're proved, as opposed to arguing what I thought you were arguing, but I'm not so sure that, no, what you've got two years to file, but if you need to fully, in order to fully compensate the parents and the student, you need to go back beyond the two years. If it's a continuing violation, and that's what we have here, you can do that. You're not caught off in two years. You're arguing the latter. Your Honor, I don't need to go back more than two years, because Geo was only in the district from ninth grade until March of his seventh grade. So I'm talking about a school year and almost three quarters of another school year. Okay, so you're only making that argument based upon the facts here, not your statute. I would submit to the court that if Geo had been there longer, I would be reaching back farther. Okay, all right. That's what I was trying to make clear. What I couldn't convince the hearing officer of was that F3C is the statute of limitations. The hearing officer found this on page 62 of the record, that March 9th, 2010, was my new or should have known date. The hearing officer then calculated forward two years and said, you're here on time. He then switched when he went to the B6B analysis and said, wait a minute, I'm going to use your filing date rather than the new or should have known date. That's where I got off track. That's where he limited me in accepting the district's argument to that three-month window. That's why we waited until the end of the hearing, got to Judge Hornack, and then had to come back and now we're here. We've always contended, and the record will show, that the district never put forth any argument about what my new or should have known date was. The remedy is different than the filing date. F3C is about how much time I have to wait before I make my request for a hearing. B6B starts off with, I may present a complaint of an alleged violation, not more than two years before I either knew or should have known, of the action that forms the basis. So the operative words are, what's the alleged violation? B6 tells us, denial of faith, evaluation, identification. The new or should have known date comes in, when did the parents become aware of this alleged violation? The action under B3, districts give parents notice. I would submit to the court that once the district gives the notice, and notice arises when there's a denial, parents ask for service, they say no. Parents request the service, they say no. Districts are to provide prior written notice, and that prior written notice comes to us under C1 of the statute. If the district doesn't provide prior written notice, and I present my complaint, the district is required to file a response using the same information that it would have given me in the prior written notice, and that's in the statute in C2A. So that action is identified by the district's response. I get to go back two years from when I knew or should have known, in a minimum, and these provisions are separate. They're not the amalgam that a district would submit to you. They serve different purposes. In order for us to affirm, we don't have to determine the question of whether you could go back further than two years, correct? You're right, Connor. Okay. So, I mean, I hear that in the background, but that's really not an issue that we need to reach today. Under these facts, we probably don't have to. The practical reality is what the districts are doing is they're using F3C as a cap on the appropriate relief provision. They're saying, look, you file today, we count back two years, and that's it. And that offends the other part of the statute, 1415IC3, the appropriate relief provision. It's not a damage cap. It just says get here on time. But you would contend that we need to interpret how these two sections work together. Yes. And so we need to address the question about whether it functions as a cap or we look at it as going back to the extent of the remedy needed, which in your case happens to be two years. Right. Yes, Connor. And the reauthorization in 04 was focused on parents not making good complaints. The legislative history is clear. Parents didn't follow the direction from the 97 statute under B6 in giving districts enough notice. Districts were giving parents notice under B3. Parents weren't giving districts enough. They put B6, B6A, no, B6B, B7A in so districts would know. Districts then respond if they haven't already given prior written notice. That gets me to the resolution session. Both sides know what the other side is talking about. It's a no surprise rule. It's clear. But it doesn't stop you from going forward. Now, if the district doesn't think my complaint is any good, they file a sufficiency challenge. Hearing offices were ruled. Jelly weren't complete. Start over. And if I have to start over and amend based on that, timeline starts over in terms of resolution session. I file. I get the 15 days. I have 30 days to complete resolution, and then we may request a due process hearing. That language is being lost in the district's argument. Because, Greenlee, in your hypothetical, if you go by the filing. No, the first one or the second one? Well, the second one. I like the second one better, too. The concept of the moving date. If we go with the moving date, F3C means nothing. Absolutely. It wipes it out. If you go with the filing, if you don't go back, as the language is clear in the statute, we make B6B superfluous. So, one of them has to go under the district's argument, and that's contrary to the canons of construction. It should be read together, especially the amendments of a statute that's trying to solve a problem. Every word, every phrase, every clause. So, that's how it's concerned whether or not it's a continuing problem. Because if there are two or three isolated situations, I don't know how that would happen. It would have to be outside the IEP context, I guess. But if I could imagine a situation where there were two or three or three or four isolated situations where a child was denied an appropriate education, maybe there was something in the IEP and calling for immediate reading and an immediate teacher just didn't show up. But it would seem as though when you have a continuing violation, I just don't know how you address the child on the last day of the filing period is in the condition that he or she is in because of the brutality of what happened or what didn't happen but should have happened leading up to that last day. And I don't know how you remedy something on the last day without looking, how did we get here? What did the school district not do to put us in this situation in order to compensate the parents and the child? I just don't know how you do that. Judge McKee, you're talking about the appropriate relief provision. What is the scope of the harm? We have two theories of how you calculate that in Pennsylvania. One is under M.C. and Ridgewood where you look at the hours lost and you give the child back the hours. The other is an emerging theory under Weed. It's a D.C. District of Columbia case. It's a qualitative approach. That's based on the theory of damages and how you calculate the metric for compensatory allocation. I think some of that makes a little bit of sense. It seems in those cases, you mentioned Ridgeway and the other case, again, as I mentioned, was named prior to the amendments in 2004. But if we're looking at the hours vis-a-vis the injury of the quality, it seems to me the hours are a proxy for the quality. I don't think that's a different test. They might use different language and we may have read it, but other courts may look at it differently. But there's an assumption when you look at the hours that the hours equate with quality, which is clearly not necessarily true. That's absolutely correct, Your Honor. And sometimes it takes longer to learn. If I was a young child, I could have maybe done it in 100 hours. Now that I'm an older child, it's going to take 200 hours or 300 hours because we have to go back and scrape away all those brain calluses. But in the court, this is not about limiting remedies. This is about a pleading requirement under D-60. I make a complaint. I present it. It includes certain elements. Our complaint was not challenged for sufficiency. We didn't have a resolution session because we both knew what we were fighting about. My complaint, I asked for more than 2,000 hours of compensatory education. In Pennsylvania, a high school student goes to school for 990 hours. I was at the limit because that's where we were. He was a sophomore. I wanted freshman year and I wanted a sophomore year. We were trying to make the child whole by using the hours. We left in March. We left in March because we acquired two identified new disabilities as a product of being in the district. It goes right to what you were talking about. If something happens, there's a new diagnosis, and now that's not going to get addressed. He should not have to suffer that type of a loss. If we are inclined not to cap the remedy or to limit it to day one of the two-year period, but to look back to try to compensate as the legislative history and policy seem to indicate, it seems like we have a couple of choices. One presented by Amicus suggests that as long as within the two-year window leading up to that new or should have known date, there's some continuation of the violation into that window, that you then get full compensation. Another approach might be to look at the statutes and say, given the ambiguity in the statute and given what the Department of Education has said, that they should be the same, and given the legislative history, which seems quite clear that both the House and Senate had intended a traditional forward-looking two-year statute of limitations, that B is more like a drafting error and we don't have a cap on remedy. Between those two, I'd like to get your views on the following. In what Amicus has suggested in that reading, which at least gives some meaning to subsection B still, if you have a situation where you file, say an injury is a very old injury. It's not ongoing within two years of the new or should have known date. The parents then learn of it somehow, something that happened years earlier. That would then be barred because it was not coming up. You couldn't allege something that continues into that two-year period. Your Honor, first, B6B is not a drafting error. B6B was the compromise. House Resolution 1350 had the language that Ms. Lane is arguing to the court. There was an arbitration provision that said you go back one year from the date you filed. That was taken out. 1350 was the House Resolution. 1350 went to the Senate. The Senate took 1350 and incorporated it in with 1248. That was the Senate version. That then went back to the Conference Committee. When that went to the House, when the filing date was taken out in B6B and B6 were modified in B7, the House voted 397 to 3. It goes to the Senate. The Senate votes, it's like 90 to 3. It's a very overwhelming vote. That was put in there to make sure that people could get to the remedy and that we wouldn't start with today and no longer how the kid got here. We have to know the history of how the child was harmed. Perhaps I'm not following because the House bill, as I understand it, was also initially a one-year, but it was also a traditional statute of limitations. In a statute of limitations, you can take an injury or a new or should-have-known date and you can look forward and say you must file within two years. Or you can take it from the filing date and say you must file within one year or two years of the injury or new or should-have-known date. The House and Senate, their versions were just a mirror image of that. The House was looking back from a filing date, and the Senate was looking forward from the new or should-have-known date, and then they tried to reconcile those, right? Yes, ma'am. And so that reconciliation was that the emphasis was placed because the House was focused on complaints because the parents weren't telling districts enough of what the alleged violation was. So B6B was to say, tell me what it is, tell me where it is, tell me how long it is, tell me where it started so I can go back and assemble a group of people and get the history of how this child got there. So it was focused on trying to make parents plead better to put districts on notice to make the resolution session meaningful. Everybody says you may request a hearing. You don't have to get a hearing because hopefully we get a resolution. The focus was on this resolution because the Congress was also focused on mediation, avoiding hearings. So you think the right interpretation of the statute is one that requires an allegation that the violation has continued into a two-year window before a new or should-have-known date. Yes. And if you can't do that, if there's a violation that occurred three years earlier and you learn of it, the new or should-have-known date is three years later, there's simply no remedy. No, Your Honor. The harm that happened, if the child didn't get a service and now three years later we find out the child didn't get the service, that child's progress could not have been meaningful because they would have been denied the opportunity to benefit from that service. That harm would always continue. I don't see an isolated harm. I know the hypothetical is built around an isolated one-time occurrence. If it was the teacher didn't show up one day and I missed my speech class, I would think that doesn't impact on meaningful educational benefit. But if the teacher went on some type of a leave, the parent never knew and never found out that the child wasn't getting services, that progress would have been impacted every year. I believe there will always be a continuing violation going to the harm the child has suffered, and that's what B6B is about. The violation is the denial of faith that we're looking at, right? It's not just an impact from a violation that, I mean, the ongoing violation, as I thought I understood your argument, involves some denial of faith, not simply the consequences to the child of a discrete violation, a discrete denial in a given year. I mean, true, those consequences might follow, but are you suggesting that that would be an ongoing violation under the IDA? I think they are. Depending on how the child's didn't progress, that could open it up. The hypotheticals are great, but they don't give us enough information about if it was reading. If the child was reading, we know you have to read all the time. If the child missed a speech, this is an ongoing service. If the child missed a behavioral service, it affects them every day, all day, every minute. Yeah, but I guess the question is, you're not going to argue that any violation of any argument with regard to what might constitute a violation of faith could turn into a continuing violation argument, right? They all don't fall into that category. You'd have to agree, right, that there are at least two categories of violations, one that are discrete, as Judge Krauss was alluding to, and then ones where at least you could make the argument that it might be continuing. Yes, Your Honor, absolutely. So those that are discrete wouldn't be able to be brought in, if you will, into the two-year period. Yes, Your Honor. All right. Thank you, Mr. Zelle. I also want to commend you. I guess I don't have anything to do with whether you're going to win or lose, so I want to commend you on introducing your client. For 20 years I've sat here and seen lawyers come into court. We can tell the clients we're in the courtroom. In fact, usually the first thing we do when we leave the bench is we think that was the client. And it just seems to me as a matter of basic courtesy to clients and to the bench, to recognize the client, and I wish more lawyers would do it, both in civil and criminal cases. We've had criminal cases where we think the client was in the courtroom. We waste too much time trying to figure out, is that the guy who's out on parole right now or not? But it's just, again, when I do teach class, I always mention that. I want to commend you for doing it. Good afternoon, Your Honors. My name is Jennifer Rosen-Valverde, and I represent Rutgers Law School's Education and Health Law Clinic and several statewide advocacy organizations. Pronounce your name again for me. I'm sorry? Pronounce your name again for me. Jennifer Rosen-Valverde. It's Jennifer I got. That's awesome, usually. As long as it's not Velveeta, I'm happy. Okay. All right. Before you begin, too, I just want to – about 20 years ago I stopped reading law articles because I concluded that they're only good for purposes of arguing tenure. But your article was an exception to that. It was an exception. Again, it has nothing to do with merits. It doesn't mean you're going to win, but it certainly does mean that it's serious food for thought, and I commend you on it and also your participation here today as an amicus. Thank you, Judge. That means a lot. That doesn't mean she'll go back to Rutgers and tell your professors to practice with more law. I understand that, and I'm not up for tenure because I don't get tenure. Say that to the Academic Affairs Committee of the Board. Your Honors, as I'm sure you're aware by now, Aniki urged this Court to affirm the lower court's decision, but on different grounds, and in fact somewhat substantially different grounds, because we believe that 2 plus 2 does not go far enough. Well, you know, I started with Mr. Gellion's argument. I understand why you're making the argument. I understand the argument. It seems to me to be totally irrational given the required compensation. But, yeah, I think you'd agree that in this case we don't have to get there because the student is only talking, which means only in school spheres. And, Your Honor, I would agree with that, except for the fact that the phrasing of the Court's opinion will be critical because by affirming the 2 plus 2 nomenclature, that already has been found to create this artificial limitation going two years back and limited liability. And if you wouldn't, why wouldn't it be dicta anyway? Dicta is irrelevant. In many times we say dicta when it helps us get where we want to go. But why would it be dicta? Well, because the IH Court and the GL Court, the GL Court relied on the IH Court decision. Both of those decisions specifically defined 2 plus 2 as the two years back, creating a look-back provision that restricted the scope of liability and the scope of remedy available. And so simply by virtue of the fact of affirming the lower court's decision in this matter, I believe that it would have severe ramifications for many children, most of whom are the ones who have compensatory education as their sole remedy available because they're not able to front the cost of an appropriate education and then seek reimbursement. But you don't think that the district court went so far as to say that if there were what's been referred to today as a continuing violation, that couldn't be recompensed if we adopted a 2 plus 2? I think just merely by virtue of adopting 2 plus 2 because the way 2 plus 2 has been defined, in fact the GL Court compared it to Title VII of the 1964 Civil Rights Act and in fact called it a look-back provision that restricted the scope of the remedy. That's very dangerous language. Title VII acknowledges, I'm sorry, the case law as it's developed, right, has obviously acknowledged a continuing violation theory in that area of the law. So why wouldn't that apply here? Well, because in the courts, the lower courts typically will, with all due respect, there's been a lot of confusion regarding whether or not continuing violations applies only to F3C or if it applies both to F3C and to B6B, and it creates a tremendous amount of confusion that we see at least at the administrative level and also now coming out at the district court level. What about Chief Judge McKee's question? If we get to its dicta, I mean, how does it become integral? Just because it was part of the basis of both of the lower courts' decisions? Mainly because it was termed 2 plus 2 and the way it was defined was 2 plus 2 means you get to go two years forward, two years back with a four-year liability limit. And the notion that that creates a limit is what the concern is for all of us. So we believe that 2 plus 2 artificially and improperly restricts the scope of liability and remedy in conflict with the plain language of the Act, the legislative history that Judge Crouse correctly stated, the Third Circuit and Supreme Court precedent, as well as public policy. And I'd like, Your Honors, to refer to, if possible, I'm a visual person. On page 9, we created a diagram in our amicus brief. So, Judge Greenway, if you don't mind, if I work off this hypothetical instead, or do you prefer I stick to yours? Well, I was going to make a hypothetical based on your answer. I like page 9. No, go ahead. Okay. So what we tried to illustrate is as follows. So let's say we have a situation where a school district violates the IDEA, causing an injury, and it starts on September 1, 2005. The injury continues for a five-year period before the parent's CASHA date, so before the parent is deemed to know or should have known about the injury. So clearly, 1415F3C applies only to the situation where the parent then has two years from that September 1, 2010 date to file for a due process petition. That's all 1415F3C does. There's nothing in amicus view that has no further relevance. B6B comes into play. We don't believe that that is a statute of limitations. We merely believe that it's the IDEA and Congress' way of setting forth what are the elements of a complaint. So is it advisory? It's not advisory, Judge, but it does state that in setting forth and a complaint must set forth an alleged violation and alleged violation that occurred not more than two years before the newer should have known date. And basically, it's amicus contention that as long as the complaint includes a violation that occurred within that two-year period prior to the newer should have known date, then the complaint requirements are satisfied. So in your hypothetical, if there is a violation in the 05 to 08 window and the newer should have known date is in 2010, that family is just out of luck. Well, so your honor raises a very important point, and so I think there's a couple of examples I'd like to throw in there. So the first is that if that violation was continuing even just one day from Section A into Section B, by virtue of being one day into Section B, then that entirety of the complaint can be heard. I think it's... Right to September 1 of 05. Yes. Because that's the day that the right to compensatory education begins. This court in MC determined that the right to compensatory education begins when the school district knew or should have known of the action that is causing injury. If we take your hypothetical to the absurd extent that some might argue on the other side, right? I mean, so you gave us 05 to 08. I mean, it could be 04. It could be 03. I mean, you know, K-12 was the problem, right? So it could be the entire thing. Where would we draw an end, or is your argument that no matter how far we go back, if there is some nexus that provides the continuing violation argument that you're posing, that it would pass that hurdle? I think the legislative history helps to clarify that point. So I think the legislative, well, the legislative history states that in essence language, and basically it says if the claim started and ended more than two years prior to that two-year period before the knew or should have known date, so if it started and ended within Section A, then it's done. The claim is barred, and that's what the legislative history actually says, the Senate report. But if it was ongoing at all into that Area B in our diagram, then you would be able to hear the claim in the entirety. And the reason being that compensatory education does not unjustly enrich a student. It does not unjustly penalize a school district. It's merely giving the student what the school district should have given the student had the district properly educated that student all along. So if it means that we have to now go back six years like the case in Ridgewood or whatnot, and that was the period of deprivation, the period of injury, then giving that student back what the district should have done requires that that remedy be awarded in its entirety. Where in the legislative history does it state that a violation that takes place two years, more than two years before a knew or should have known date has no remedy available? Well, in the Senate report, which is quoted in Niki's brief at 22 and also in Helen's brief at 20 and 21, the language states, well, it starts off stating that the statute of limitations is not intended to alter the principle under the idea that children may receive compensatory education. Whoa, whoa, whoa, whoa, slow down. Sorry. Are you using your quote or are you using your text? I'm using the text of the ‑‑ it's from the ‑‑ On page 22. On page 22, yes. Right. So on page 22, the quote, that was the lead-in to that paragraph, my apologies to us. So it states, in essence, where the issue giving rise to the claim is more than two years old and not ongoing, the claim is barred. And so by that, that's how Amiki have understood that if the issue gave rise to a claim that was more than two years old, so more than two years. But the two years, this is the Senate report. Yes. This is the report that is looking at the filing date. So doesn't this mean in the context of the filing date that it's really where it's not ongoing as to the two years before the filing of the complaint? How does this suggest that you're going back two years before the new or should have known date if we keep in mind that the Senate is using the filing date, it's the House that is looking at it in the other direction? I see your point, Your Honor. There was no legislative history for the B6B provision. And so this is the only piece of the legislative history when one is trying to examine both F3C and B6B to get any sort of indication as to how the two operate off of each other. This was the only one that actually spoke about any limitations that might be related to a particular claim. And so it was our understanding that if, you know, following this language that there would be a bar at some point and that bar would be the more than two years prior to the new or should have known date. And by way of example, let's say you have, going back to the diagram, let's say you have a child who from September 105 to for six months was denied speech and language services. Let's say the speech and language therapist went out on leave. They did not provide a replacement. But then they came back, and they came back, and it went on. But let's say the parent didn't learn about it until the new or should have known date of the 9-1-2010. You know, we do believe that likely Congress intended there to be some limit at some point because to limit a six to litigate a six-month claim that happened five years ago that the parent only learned about now, that was time limited in scope, where the district has done everything else post that time correctly, that that claim, you know, trying to think of the idea that claims do become stale, and we're trying to be cognizant of that, that that's not a claim that then could state a violation that occurred within the two-year period prior to the new or should have known date. And so our view is that as long as a claim is timely filed, so within the two years of the new or should have known date in accordance with F3C, and it states a violation that occurred within the two-year period prior to the new or should have known date, then the claim can go on for as long as possible. I want to talk about a slight permutation of that to see if I understand. Okay. So one second so I have it in front of me. Okay. If I am in A, do I, my continuing violation has to work its way into B, or does it have to work its way to knowing my cost date? No, it certainly does not have to work its way to the new or should have known date. All it has to do is work its way into the two-year period prior to the new or should have known date into B. So even just one day into B, that would make that claim. It would satisfy the elements of B6B. We tried to give meaning to the language of B6B. We tried not to think of it as addressing error, and so we looked at it with that in mind. Based on that, we believe that in accordance with the plain language of the Act, it's clear that as long as a violation is stated that occurred within that two-year period prior to the new or should have known date, then the complaint requirements are satisfied. Just on the burden of proof issue that was raised in the parties' briefs, I take it that in terms of the traditional statute of limitations piece of this C, you'd say that the burden is on the school district there. But with what you are, the way you're reading Section B as sort of pleading a prima facie case, that burden, that pleading, and presumably the proof that goes with it, would fall on the parents? Well, so if, you know, I believe that the burden of proof would fall on the filing party in that instance, and so because we're talking about the parent here, then it would be the parents, unless, of course, we're in New Jersey where we state that the burden of proof, according to state law, is actually always on the school district, and so then perhaps we might have a different say if we were dealing at the administrative level. I would just like to add, with your Honor's permission, I think that the public policy connotations here are also incredibly important. Specifically, we know that many children who are affected by such a limit have the greatest need for special education services, and two-thirds of students who receive special education are, in fact, live in households that earn at $50,000 annually or below, and one-half of those earn at the federal poverty level or below. And these are the families who do rely disproportionately on compensatory education as a remedy. And your Honor, Justice Greenway recognized the importance of this concern in SH versus Lower Marion School District, and so we urge the Court to consider the fact that, you know, any artificial limitations on the scope of liability or available remedy, such as 2 plus 2, and certainly such as what is being proposed by the school district here, reduces the chances of low-income children, in particular with disabilities, to perform commensurate with their non-disabled peers and their wealthier peers when the IDEA is violated for lengthy periods of time. And so just in conclusion, while we recognize, of course, that this is somewhat outside the scope, you know, at the very least we would urge this Court to please carefully craft the language of the opinion should this Court be affirming the lower court. And it's our belief that simply by looking at the plain language of the Act, in this case GL filed with inappropriate timelines according to F3C. The complaint stated a violation that occurred within the two-year period in accordance with B6B prior to the newer should-have-known date. And on those grounds alone, we believe that the lower court's decision could be affirmed, but we just very much caution against continued use of that 2 plus 2 language because of the fact that it can be vastly misinterpreted to the detriment of so many children. Thank you. Thank you, Professor. Ms. Bingham, do you have some time? I just wanted to clear something up about the complaint, the underlying complaint here in GL. There was a notice of complaint that was forwarded to district counsel that said these are our issues and we're demanding this amount of compensatory hours. The school district answered that complaint and stated in the answer that they viewed the time period at issue for the hearing from the filing date back to the two-year period. So we did answer to Mr. Gelli what we considered the scope of claims and what would be at issue during that hearing. Mr. Gelli did not seek any refuge in any statutory exceptions at the hearing. I don't think he's relying on the two statutory exceptions. He's simply arguing that an appropriate interpretation of the statute would allow him to go back and recover for more than the three months that he was in school. There is some language floating around in the briefs and some allegations that might come within the misrepresentation or withholding information part of the statute. Maybe I'm wrong. I don't see that as being the force. What I see here is the interpretation of these two seemingly congruous statutes and limitations or whatever the heck they are in subsection F and subsection B or C. The two years is the problem here and not the exceptions to that two-year requirement. Correct. At the time of filing his complaint, he did not seek refuge in the exceptions and at that period of time in the state of due process in Pennsylvania, you were looking at typically the two-year timeframe from the filing date back until there was decision of IH, which was in the middle district by Judge Jones, which the lower court followed. There has since that time been another middle district case that has followed that same reasoning and that was by Judge Rambo. That case was recently decided. The case is Janakay v. Colleenville School District. Right now, you have two middle district cases that are filing this reasoning. You have one in the western district. I have been unable to uncover any in the eastern district. Interestingly enough, Judge Rambo- Robert, I think it is, Robert L., they seem to pretty clearly suggest that the appropriate resolution of this tension is to approach it in the way that was suggested by Ms. Valverde, that as long as you get your leg within that two-year window in order to be compensated, you can then go back and look at anything other than that. Yeah, because his role in this court and certainly understand where they come from. Their position is basically arguing to this court, let's go back to before the reauthorization. Let's just not have the limitations at all. At that point in time, we did litigate cases that were the senior year of a child's education and we litigated denial of state claims back to kindergarten. In essence, that's what she's arguing. She's like, as long as we have a date and we file within this two-year window and there's some connection to that new or should-have-known date, I get to go back forever. Let's take that to the extreme, which on its face seems so extreme as to be unreasonable. Let's assume that a kid who comes into kindergarten has real reading deficiencies even for somebody who's in kindergarten. Is supposed to be given a kindergarten teacher, is not given a kindergarten teacher. The parents think, I'm sorry, a reading specialist. The parents think that the child is getting a reading specialist. They have every reason to believe they're getting a reading specialist. And I don't want to say they've been told that because then we're into the two exceptions. I don't want to get that in here. Kid goes all the way through lower school, middle school, and never is given a reading specialist. And then withdraws two months before graduation as a senior, never having had the reading specialist that the parents thought all along this kid was getting. Parents find out within two years minus two months of the graduation the kid never got a reading specialist. So the school comes forward and says, you know, I'm sorry about that. I don't know how we slipped up here. What we're going to do is give your kid, you know, two months before graduation, that's five school days per week for two months. So we're going to give them 20 hours of a reading specialist. You're saying that's okay. I mean, the kid now cannot read and you're saying 20 hours sitting down in a room with someone who's a reading specialist is okay because his pain is cut off. That's what you're arguing. Whereas they're arguing that you've got to look at how you remedy the situation. The remedy to the situation is the kid never, ever was taught to read from day one, and the only way you can address that now that you're within the window is to somehow, and I'm not sure in my scenario it can be done, but somehow compensate this kid with the kind of support that he or she would need to be put in a position where they would be able to read as a high school senior. In the extreme scenarios you have presented, the factual scenarios you have stated, that the school district guaranteed the provision of the service and failed to do it, even though you've stated that there wasn't any misrep by the school district, that scenario in itself would be the exception. It would open the door. I'm as hypothetical as it was judging your witness. I gave you an escape hatch with mine. I didn't intend to toss to you. I can see that my time is up. Thank you. Sorry, you said it's in district court cases. I'd just like to hear your thoughts because another circuit, the 11th Circuit, has addressed this in the Draper decision. Yes. With language that mirrors, is almost identical to language that we used in the MC case. And I'd like to hear your thoughts on why we should take a different approach. Why isn't the analysis spelled out by the 11th Circuit the right one? The 11th Circuit adopts similar to the 2 plus 2 where they're looking at there is no bar to accrual, that there's an accrual of a claim and a filing of a claim. In this court, in the MC decision, which spoke to compensatory education, that's prior to reauthorization. It's our position that the language within that did not address what you have before you today. Now we have a clear bar to claims. The circuit court has heard DK wherein you referred to the two-year time frame. Although the parties conceded, you took that time frame back from filing B. You had the case of PP versus Westchester in 2009. You state that Congress expressed an interest in promptly resolving disputes as evident by this passage of the statute of limitations. And then you have C&I, which is a 3rd Circuit decision in 2010. And you state that they broke new ground by providing a two-year statute of limitations where previously there had been none. And in that decision, the language refers to barring any claim accrued prior to two years from the filing date. And that's the district's position that the two provisions, B6B and F3C, refer to the same two-year time period. And within that language of both, inherent is the accrual. You're not claiming a remedy. The way you are doing it, you're creating a claim with a remedy in your mind that makes sense. And it may be. You may be right about that, but that's the way you're looking at it. In this situation, an IEPA, every year an IEP is written, drafted with participation of parents, and they are given a list of that provision along with progress monitoring. So if a claim up to that IEP is barred, so is the remedy. That's my position. Okay. Thank you. Thank you. That's helpful. A very helpful argument. I don't believe either of you have heard this from me before, I don't think. But I think it's very, very helpful.  And also for the makers argument, Professor. Thank you. Thank you.